UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADVANCE MAGAZINE PUBLISHERS INC.,
d/b/a CONDÉ NAST,

    Plaintiff,

               Case No.: _____

v.              JURY TRIAL DEMANDED

GENTLEMEN'S QUALITY FASHIONS LLC,
d/b/a GQ FASHIONS TAMPA,

    Defendant.

_____/

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

  Plaintiff Advance Magazine Publishers Inc., d/b/a Condé Nast ("**Condé Nast**" or "**Plaintiff**"), through its undersigned counsel, hereby brings this Complaint and Demand for Jury Trial against Defendant Gentlemen's Quality Fashions LLC, d/b/a GQ Fashions Tampa ("**GQ Fashions**" or "**Defendant**"), and alleges as follows:

## **THE PARTIES**

  1. Plaintiff is a corporation organized and existing under the laws of the State of New York with an address of One World Trade Center, New York, New York 10007.

  2. Defendant is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 3010 East Hillsborough Avenue, Tampa, Florida 33610. Upon information and belief, Defendant's members

are Ramesh Harjani and Asha Harjani, both of whom are residents of the State of Florida.

## NATURE OF ACTION

3.     This is an action for trademark infringement, false designation of origin, unfair competition, and dilution under the Trademark Act of 1946, as amended (The Lanham Act, 15 U.S.C. § 1051, *et seq*.), and related state law causes of action based on GQ Fashions' use of "GQ," "GQ Fashions," and "GQ Fashions Tampa" in connection with GQ Fashions' retail clothing store and related retail store services, in violation of Condé Nast's established rights in its federally registered marks and common law marks for related goods and services.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act), 28 U.S.C. § 1331 (actions arising under Federal laws), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks), 28 U.S.C. § 1367 (supplemental jurisdiction over the state law causes of action), and 28 U.S.C. § 1332 (diversity jurisdiction where matter in controversy exceeds $75,000 and is between citizens of different states). Condé Nast seeks damages in excess of $75,000.00.

5.     This Court has personal jurisdiction over GQ Fashions, because GQ Fashions purposefully directed its activities at residents of Florida, and the litigation

at issue results from injuries to Condé Nast that arise from or relate to those activities. GQ Fashions is located in Tampa, Florida.

6. Venue properly lies in this Division under Middle District of Florida Local Rule 1.04, because Hillsborough County has the greatest nexus with this cause. GQ Fashions' principal place of business is in, and the cause of action arose, in Hillsborough County.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

## CONDÉ NAST'S GQ MARK

5. Condé Nast is the owner of common law and registered trademark rights in and to the marks GQ and GQ STYLE and the stylized marks **GQ**

and  (collectively, the "**GQ Mark**") in the U.S. and throughout the world.

6. Condé Nast has continuously used the GQ Mark in connection with its magazine *GQ* (the "**Magazine**") since at least as early as 1957. The Magazine is one of the nation's premier men's lifestyle magazines.

7.      Condé Nast also uses the GQ Mark in connection with its corresponding website, GQ.com (the "**Website**"). The Magazine and Website both cover the subject matter of fashion, entertaining, food, beverages, travel, and culture.

8.      In its Magazine and Website, and through its sponsored events throughout the U.S., Condé Nast promotes the goods and services provided directly by Condé Nast and by others using its GQ Mark.

9.      In addition to the Magazine and the Website, Condé Nast has expanded its use of the GQ Mark to other goods and services.

10.     By way of example, Condé Nast has collaborated with Gap and a number of other apparel brands and fashion designers to release a line of GQ-approved men's clothing, as shown below:



11.    Additionally, Condé Nast has licensed its GQ Mark to bars and restaurants in markets outside the U.S. and has sponsored bar and cocktail events within the U.S.

12.    Further, Condé Nast uses the GQ Mark in connection with barbershop services and grooming products. Condé Nast advertises and sells on its Website a monthly grooming box, "GQ Grooming Box," which includes award-winning grooming products for men handpicked by *GQ* editors, as shown below:



13.    As a result of Condé Nast's longstanding and continuous use of the GQ Mark, the GQ Mark has acquired substantial goodwill.

14.    Since its first use of the GQ Mark, Condé Nast has spent significant resources advertising, developing, and promoting the GQ Mark. The GQ Mark has become synonymous with the upscale lifestyle products, apparel, clothing, and

services that are contained within the editorial pages and advertisements published in the Magazine and on the Website and promoted through events, contests, licensed merchandise, and gatherings. As a result, millions of consumers in the U.S. (including consumers in the State of Florida) and worldwide instantly associate men's clothing, fashion, apparel, and accessories with Condé Nast's distinctive and famous GQ Mark.

15.     The GQ Mark has become well known in Florida, throughout the U.S., and abroad, as a symbol of Condé Nast's goods and services.

16.     Thus, Condé Nast has established, through continuous, long-term use in commerce extensive common law trademark rights in the GQ Mark.

17.     Additionally, Condé Nast is the owner of a number of trademark registrations issued by the U.S. Patent and Trademark Office for marks incorporating the GQ Mark, including, among others:

> (a)     **Mark**: GQ
> **U.S. Registration No.**: 1298799
> **Filing Date**: November 16, 1983
> **First Use**: June 1, 1957
> **Use in Commerce**: June 1, 1957
> **Registration Date**: October 2, 1984
> **Register**: Principal
> **Goods and Services covered**: "Men's Magazine Dealing with Fashion, Entertainment and Other Topics of General Interest" (International Class 16).
>
> A true and correct copy of U.S. Registration No. 1298799 is attached as **Exhibit 1**. Condé Nast's registration is valid and subsisting and has become incontestable.

6

    (b)    **Mark**: GQ
**U.S. Registration No.**: 2897762
**Filing Date**: September 9, 2002
**First Use**: September 1, 1994
**Use in Commerce**: September 1, 1994
**Registration Date**: October 26, 2004
**Register**: Principal
**Goods and Services covered**: "providing entertainment information about sports and leisure activities and news for men via the internet" (International Class 41); "providing information about men's fashion via the internet" (International Class 45).

A true and correct copy of U.S. Registration No. 2897762 is attached as **Exhibit 2**. Condé Nast's registration is valid and subsisting and has become incontestable.

    (c)    **Mark**: GQ
**U.S. Registration No.**: 3436617
**Filing Date**: June 9, 2006
**First Use**: August 1, 2007
**Use in Commerce**: August 1, 2007
**Registration Date**: May 27, 2008
**Register**: Principal
**Goods and Services covered**: "Promoting the goods and services of others by distribution and transmission of advertisements in the nature of audio, video, text messages and emails via wireless and mobile devices" (International Class 35); "Transmission of information through video and audio via digital networks and electronic communications networks" (International Class 38); and "Providing information about fashion via wireless mobile devices, satellite, cable and global computer networks" (International Class 45).

A true and correct copy of U.S. Registration No. 3436617 is attached as **Exhibit 3**. Condé Nast's registration is valid and subsisting and has become incontestable.

(d)     **Mark**: GQ
        **U.S. Registration No.**: 4642438
        **Filing Date**: October 24, 2013
        **First Use**: January 6, 2014
        **Use in Commerce**: January 6, 2014
        **Registration Date**: November 18, 2014
        **Register**: Principal
        **Goods and Services covered**: "Hair cutting; Hair cutting services; Hair salon services; Barber shop services; Barbering services" (International Class 44).

A true and correct copy of U.S. Registration No. 4642438 is attached as **Exhibit 4**. Condé Nast's registration is valid and subsisting.



(e)     **Mark**:
        **U.S. Registration No.**: 2956663
        **Filing Date**: December 18, 2003
        **First Use**: April 1, 2002
        **Use in Commerce**: April 1, 2002
        **Registration Date**: May 31, 2005
        **Register**: Principal
        **Goods and Services covered**: "Printed matter, namely general interest magazines" (International Class 16); "Providing an online general interest magazine featuring topics of interest to men, namely, humor-oriented writings, politics, humor, pictures, sports, music, health, fitness, fashion, books and movies" (International Class 41).

A true and correct copy of U.S. Registration No. 2956663 is attached as **Exhibit 5**. Condé Nast's registration is valid and subsisting.



(f)     **Mark**:
        **U.S. Registration No.**: 1833829
        **Filing Date**: August 20, 1993
        **First Use**: 1983
        **Use in Commerce**: 1983
        **Registration Date**: May 3, 1994
        **Register**: Principal
        **Goods and Services covered**: "magazine dealing with fashion, entertainment, health, lifestyle and other topics of general interest, directed to men" (International Class 16).

A true and correct copy of U.S. Registration No. 1833829 is attached as **Exhibit 6**. Condé Nast's registration is valid and subsisting and has become incontestable.



(g)     **Mark**:
        **U.S. Registration No.**: 5392161
        **Filing Date**: July 24, 2014
        **First Use**: May 15, 2017
        **Use in Commerce**: May 15, 2017
        **Registration Date**: January 30, 2018
        **Register**: Principal
        **Goods and Services covered**: "Briefcases; briefcase-type portfolios; tote bags; wallets; toiletry bags; luggage; backpacks; bags; luggage tags; grooming kits; shaving kits; dopp kits" (International Class 18).

A true and correct copy of U.S. Registration No. 5392161 is attached as **Exhibit 7**. Condé Nast's registration is valid and subsisting.



(h)    **Mark**:
**U.S. Registration No.**: 5392162
**Filing Date**: July 24, 2014
**First Use**: July 31, 2017
**Use in Commerce**: July 31, 2017
**Registration Date**: January 30, 2018
**Register**: Principal
**Goods and Services covered**: "Footwear, namely, shoes, boots and sneakers" (International Class 25).

A true and correct copy of U.S. Registration No. 5392162 is attached as **Exhibit 8**. Condé Nast's registration is valid and subsisting.

(i)    **Mark**: GQ
**U.S. Registration No.**: 3925065
**Filing Date**: May 18, 2010
**First Use**: November 18, 2009
**Use in Commerce**: November 18, 2009
**Registration Date**: March 1, 2011
**Register**: Principal
**Goods and Services covered**: "Computer application software for use with smartphones, PDA devices and tablet computers, namely, software for accessing, viewing, interacting with and downloading editorial and advertising content from magazines and websites" (International Class 9).

A true and correct copy of U.S. Registration No. 3925065 is attached as **Exhibit 9**. Condé Nast's registration is valid and subsisting and has become incontestable.

(j)     **Mark**: **GQ LOUNGE**
        **U.S. Registration No.**: 2695465
        **Filing Date**: May 6, 2002
        **First Use**: February 21, 2001
        **Use in Commerce**: February 21, 2002
        **Registration Date**: March 11, 2003
        **Register**: Principal
        **Goods and Services covered**: "Nightclubs" (International Class 41).

A true and correct copy of U.S. Registration No. 2695465 is attached as **Exhibit 10**. Condé Nast's registration is valid and subsisting and has become incontestable.

(k)     **Mark**: GQ STYLE
        **U.S. Registration No.**: 5007105
        **Filing Date**: November 23, 2015
        **First Use**: March 11, 2014
        **Use in Commerce**: March 11, 2014
        **Registration Date**: July 26, 2016
        **Register**: Principal
        **Goods and Services covered**: "Periodically published magazine featuring topics of interest to men" (International Class 16).

A true and correct copy of U.S. Registration No. 5007105 is attached as **Exhibit 11**. Condé Nast's registration is valid and subsisting.

11

(l)     **Mark**: GQ STYLE
        **U.S. Registration No.**: 5196535
        **Filing Date**: November 23, 2015
        **First Use**: August 31, 2016
        **Use in Commerce**: August 31, 2016
        **Registration Date**: May 2, 2017
        **Register**: Principal
        **Goods and Services covered**: "Providing an online non-downloadable general interest magazine featuring topics of interest to men" (International Class 41); and "Providing information about fashion via digital networks" (International Class 45).

A true and correct copy of U.S. Registration No. 5196535 is attached as **Exhibit 12**.

(m)     **Mark**:  GQ RECOMMENDS
        **U.S. Registration No.**: 5611138
        **Filing Date**: April 5, 2018
        **First Use**: January 11, 2018
        **Use in Commerce**:  January 11, 2018
        **Registration Date**: November 20, 2018
        **Register**: Principal
        **Goods and Services covered**: "Online retail store services featuring apparel, hats, shoes, hair care products, watches, fashion accessories, grooming products, electronics, sporting goods" (International Class 35).

A true and correct copy of U.S. Registration No. 5611138 is attached as **Exhibit 13**. Condé Nast's registration is valid and subsisting. Condé Nast's registration is valid and subsisting.

Collectively, the marks in the registrations listed in (a)-(m) above shall be referred to as the "**Registered Marks**."

18.     Condé Nast is also the owner of several allowed U.S. trademark applications covering a wide range of goods and services, including:

(a)     **Mark**: GQ
        **U.S. Application No.**: 87/584068
        **Filing Date**: August 25, 2017
        **Filing Basis**: 1(b) Intent-to-Use
        **Notice of Allowance Date**: February 19, 2019
        **Goods and Services covered**: "Men's apparel, namely, suits, blazers, sport coats, pants, shorts, and active wear, namely, sweatshirts and hoodies, bike shorts, athletic socks, tank tops, track suits, wind resistant jackets, sweatbands; shirts; dress shirts; t-shirts; under shirts; sweaters; outerwear, namely, coats and jackets; underwear; swimwear; pajamas; loungewear; robes; footwear, namely, sandals, slippers, and flip-flops; fashion accessories, namely, neck ties, bow ties, pocket squares, belts, suspenders, gloves, and socks" (International Class 25).

        A true and correct copy of U.S. Application No. 87/584068 is attached as **Exhibit 14**.

19.     Condé Nast's Registered Marks, applied-for marks, and common law marks incorporating the GQ Mark shall be hereinafter referred to collectively as the "**GQ Marks**."

20.     Condé Nast has continuously used the GQ Marks in the United States as an identifier of Condé Nast as the source and origin of high quality printed and online publications, lifestyle products, apparel, clothing, and services.

21.     Condé Nast has expended considerable time, resources, and effort in promoting the GQ Marks and developing substantial goodwill associated therewith throughout the United States.

22.     The GQ Marks are inherently distinctive when used in conjunction with Condé Nast's goods and services.

23.     Due to the continual use of the GQ Marks by Condé Nast, the GQ Marks have come to indicate a single source of goods and services. The GQ Marks further have come to indicate Condé Nast as the single source of such quality goods and services.

24.     As a result of the long and exclusive use by Condé Nast of its GQ Marks, the significant volume of sales under the GQ Marks, and the large amount of money spent or foregone for advertising and promotion of its goods and services, the GQ Marks have become, through widespread and favorable public acceptance and recognition, an exclusive asset of substantial value as a symbol of Condé Nast, its quality goods and services, and its goodwill.

25.     Condé Nast and its use of the GQ Marks are well-known and famous.

## GQ FASHIONS' INFRINGING USE OF THE GQ MARKS

26.     Without Condé Nast's knowledge or consent, and beginning long after Condé Nast had established extensive and valuable goodwill in connection with the GQ Marks, GQ Fashions commenced to use, and is currently using, in interstate commerce and commerce affecting interstate commerce, the terms "GQ FASHIONS" and "GQ FASHIONS TAMPA" (collectively, the "**Infringing Marks**") in connection with the sale, offering for sale, distribution, advertising, and

promotion of its products and services, including without limitation, brick-and-mortar and online retail clothing store services and related services.

27.    Upon information and belief, GQ Fashions selected the Infringing Marks solely because of the fame and reputation built up in the GQ Marks by Condé Nast over many years and at great expense, and GQ Fashions' sole intention in selecting the mark was to trade on the goodwill of Condé Nast.

28.    The dominant portion of the Infringing Marks is "GQ," which is identical to the GQ Marks.

29.    GQ Fashions uses the term "GQ Fashions" and the Infringing Marks in connection with marketing and providing its retail store services to citizens of Florida and other states, and it advertises its retail store services to citizens of Florida and other states via the Internet.

30.    GQ Fashions operates a brick-and-mortar retail clothing store, "GQ Fashions" in Tampa, Florida, and is engaged in the marketing and sale of a wide variety of apparel, shoes, and accessories in commerce under the term "GQ Fashions."

31.    In addition, GQ Fashions uses a nearly identical replica of Condé Nast's graphic mark **GQ** on its signage outside of the brick and mortar store in Tampa. This use of "GQ" intentionally seeks to unfairly capitalize on the fame,

reputation, and goodwill created by Condé Nast and its GQ Mark. A photograph of GQ Fashions' storefront is attached as **Exhibit 15** and appears as follows:



32.    Upon information and belief, GQ Fashions owns and operates the website located at the domain < http://g-q-fashions.edan.io/ > (the "**Infringing Website**"). A true and correct copy of exemplary screenshots from the Infringing Website is attached as **Exhibit 16**.

33.    GQ Fashions displays the Infringing Marks prominently on the Infringing Website.

34.    Upon information and belief, GQ Fashions also owns and operates the Facebook account under the handle "@GQFashions813" (accessible at https://www.facebook.com/gqfashions813/). A true and correct copy of exemplary screenshots from GQ Fashions' Facebook page is attached as **Exhibit 17**.

35.    Upon information and belief, GQ Fashions also owns and operates the Twitter account under the handle "@GQFashions813" (accessible at https://twitter.com/gqfashions813/). A true and correct copy of exemplary screenshots from GQ Fashions' Twitter page is attached as **Exhibit 18**.

36.     Through its use of the Infringing Marks, including, but not limited to, on the Infringing Website and its social media accounts, GQ Fashions seeks to unfairly trade off the valuable goodwill and reputation built by Condé Nast in its GQ Marks.

37.     GQ Fashions is using "GQ" in U.S. commerce in connection with retail store services featuring men's apparel. These services are closely related to the goods and services being offered by Condé Nast under its pre-existing GQ Marks.

38.     As discussed in paragraph 14, Condé Nast uses its GQ Mark to indicate its approval of a line of men's clothing manufactured by other apparel brands and fashion designers. Such use is similar to GQ Fashions' use of "GQ" in promoting and selling men's apparel manufactured by apparel brands at its retail store. Additionally, retail store services featuring men's apparel are within Condé Nast's natural zone of business expansion.

39.     Furthermore, Condé Nast intends to expand into the retail store services market, as evidenced by its allowed trademark application no. 86/107748, filed on November 1, 2013 respectively.

40.     GQ Fashions is using Condé Nast's GQ Marks without Condé Nast's authorization.

41.     GQ Fashions' use of the Infringing Marks is specifically designed to create an association or suggestion of affiliation between GQ Fashions and Condé Nast.

42.     GQ Fashions' use of "GQ" intentionally seeks to unfairly capitalize on the fame, reputation, and goodwill created by Condé Nast and its GQ Marks.

43.     Furthermore, GQ Fashions' activities have a substantial effect upon Condé Nast's interstate usage of its mark, good will, and sales. The continued, unauthorized use of the Infringing Marks by GQ Fashions would subject the good will and reputation of Condé Nast to the hazards of GQ Fashions' business.

44.     At a minimum, GQ Fashions' target customers overlap with Condé Nast's target customers—men seeking fashionable clothing. As such, Condé Nast and GQ Fashions compete for a common pool of customers.

45.     GQ Fashions' services rendered under the Infringing Marks are overlapping and/or closely related to Condé Nast's goods and services rendered under its GQ Marks.

46.     GQ Fashions' use of the Infringing Marks so resembles Condé Nast's GQ Marks as to be likely, when used on or in connection with the services identified above, to cause confusion, or to cause mistake, or to deceive.

47.     GQ Fashions' use of a nearly identical mark for services closely related to Condé Nast's goods and services offered under its GQ Marks is without authority

or license from Condé Nast and creates a likelihood of confusion, deception, and mistake.

48.    GQ Fashions' use of the Infringing Marks in interstate commerce to advertise, promote, and sell its goods and services, including through its brick-and-mortar store and the Infringing Website, was never approved, permitted or endorsed by Condé Nast, and occurred after Condé Nast had established extensive and valuable goodwill in connection with its goods and services identified by the GQ Marks.

49.    GQ Fashions' use of the Infringing Marks in interstate commerce and commerce affecting interstate commerce was and continues to be without Condé Nast's consent, and began long after Condé Nast had established extensive and valuable goodwill in connection with its goods and services identified by the GQ Marks.

50.    Condé Nast's first use in commerce of the GQ Mark predates GQ Fashions' first use of the Infringing Marks and, therefore, Condé Nast has priority over GQ Fashions' first use of the Infringing Marks.

51.    Condé Nast's customers, GQ Fashions' customers, and the general public are likely to be misled into believing that GQ Fashions' services provided under the Infringing Marks are provided, sponsored, or approved by Condé Nast.

52.     GQ Fashions has infringed Condé Nast's GQ Marks by various acts, including, without limitation, the advertising, promotion, and provision of retail store services under the Infringing Marks.

53.     Because GQ Fashions' use of the Infringing Marks in interstate commerce and commerce affecting interstate commerce was and continues to be without Condé Nast's consent, Condé Nast does not control the quality (or lack thereof) of GQ Fashions' goods and services.

54.     Due to GQ Fashions' use of the Infringing Marks to advertise, promote, and sell goods and services of a lesser or unapproved quality than Condé Nast's high quality lifestyle products, apparel, clothing, and services, upon information and belief, the public is likely to associate the lack of quality or lack of prestige in GQ Fashions' goods and services with Condé Nast's goods and services.

55.     On April 25, 2017, counsel for Condé Nast sent GQ Fashions a letter, demanding that it cease and desist from all use of the Infringing Marks, including all signage, marketing, promotional, and other printed materials for the GQ Fashions store and Infringing Website, as well as all social media sites promoting the store.

56.     Despite representing to Condé Nast that it would cease use of the Infringing Marks, GQ Fashions has failed to comply with Condé Nast's demands.

57.     Condé Nast sent GQ Fashions a follow up letter on December 8, 2020, again demanding that GQ Fashions cease and desist from use of the Infringing

Marks, and that included an Order and Permanent Injunction relating to the GQ Marks that this Court issued against another apparel company in Florida whose owners, upon information and belief, are related—or at a minimum are familiar—to GQ Fashions' members and its counsel.

58.     In response, counsel for GQ Fashions claimed GQ Fashions "has no longer been known as 'GQ Fashions' since May 15, 2017."

59.     Subsequent inspection of the GQ Fashions store on February 23, 2021 confirms that defense counsel's claim is inaccurate and that defendant has failed to comply with Condé Nast's demands as reflected in the images below taken on that date.





60.     Therefore, GQ Fashions' use of "GQ" in connection with GQ Fashions' brick-and-mortar and online retail store and related services has been made notwithstanding Condé Nast's well-known and prior established rights in the GQ Mark and with both actual and constructive notice of Condé Nast's Registered Marks under 15 U.S.C. § 1072.

61.     GQ Fashions' continued use of "GQ" constitutes malicious, willful, fraudulent, and deliberate infringement.

62.     In selecting and using a mark that includes the term "GQ" in connection with the sale and offering of its goods and services, notwithstanding its actual knowledge of Condé Nast's rights, GQ Fashions has acted and continues to act with wanton disregard for Condé Nast's rights, and with the willful intent and purpose of improperly taking or benefiting from the favorable reputation and valuable goodwill which Condé Nast has established in the GQ Marks.

63.     GQ Fashions' actions have caused and continue to cause GQ Fashions' services to be passed off as made, authorized, sponsored, or endorsed by or otherwise connected or associated with Condé Nast and/or the Magazine.

64.     The Infringing Marks utilized by GQ Fashions are a colorable imitation of and confusingly similar to the GQ Marks.

65.    GQ Fashions activities are likely to cause confusion, to cause mistake, and to deceive consumers and others as to the source, nature, and quality of the goods and services offered by GQ Fashions.

66.    GQ Fashions' wrongful and illegal activities are likely to cause confusion, and to cause mistake, and to deceive consumers and others as to the origin, sponsorship, or approval of the goods and services offered by GQ Fashions with or by Condé Nast.

67.    GQ Fashions' infringing activities have caused and, unless enjoined by this Court, will continue to cause, irreparable injury and other damage to Condé Nast's business, reputation, and good will of an insidious and continuing sort that cannot be adequately calculated or compensated in money damages. Condé Nast has no adequate remedy at law.

## CAUSES OF ACTION

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT
### UNDER LANHAM ACT § 32(1)

68.    Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 of this Complaint as if fully set forth herein.

69.    Condé Nast is the owner of valid Registered Marks, as described above.

70.    GQ Fashions' use of Condé Nast's Registered Marks and colorable imitations thereof in connection with the advertising and provision of its retail store

services in commerce is likely to cause confusion, or to cause mistake, or to deceive, in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

71.     GQ Fashions' use of the Registered Marks and colorable imitations thereof constitutes willful trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), entitling Condé Nast to an injunction, treble its damages, and GQ Fashions' profits made from its infringing use of the GQ Mark, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

72.     GQ Fashions' intentional, deliberate, and willful use of the GQ Marks and colorable limitations thereof with knowledge of Condé Nast's rights in the Registered Marks constitutes a willful violation of 15 U.S.C. § 1114(1) and renders this case exceptional, entitling Condé Nast to an award of its attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION
## UNDER LANHAM ACT § 43(a)

73.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 of this Complaint as if fully set forth herein.

74.     Condé Nast owns valid registered and common law trademark rights in the GQ Marks.

75.     GQ Fashions' use of the Infringing Marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of

GQ Fashions with Condé Nast, and as to the origin, sponsorship or approval of GQ Fashions' services by Condé Nast. Additionally, the public is likely to believe that GQ Fashions' services are provided by, or sponsored by, or approved by, or licensed by, or affiliated with, or in some other way legitimately connected with Condé Nast, all to Condé Nast's irreparable harm and in violation of 15 U.S.C. § 1125(a).

76.     GQ Fashions has used names and marks which are confusingly similar to Condé Nast's GQ Marks with the intent to deceive the public into believing that goods and services offered or sold by GQ Fashions are made by, approved by, sponsored by, or affiliated with Condé Nast.

77.     GQ Fashions' acts as alleged herein were committed with the intent to pass off GQ Fashions' goods and services as the goods and services of, approved by, sponsored by, or affiliated with Condé Nast, and with the intent to deceive and defraud the public.

78.     GQ Fashions is knowingly infringing the GQ Marks in violation of the trademark rights of Condé Nast.

79.     The use by GQ Fashions of the Infringing Marks as described above, is likely to cause confusion as to the source of GQ Fashions' services and constitutes a false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Condé Nast to an injunction, treble its damages, and GQ Fashions' profits made from its infringing use of the GQ Marks, increased

subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

80.     GQ Fashions' intentional, deliberate, and willful use of the Infringing Marks with knowledge of Condé Nast's trademark rights in the GQ Marks, constitutes a willful violation of 15 U.S.C. § 1125 and renders this case exceptional, entitling Condé Nast to an award of its attorneys' fees pursuant to 15 U.S.C. § 1117.

81.     Pursuant to 15 U.S.C. § 1118 and equity, Condé Nast is entitled to impoundment and destruction of infringing articles.

## COUNT III
## FALSE ASSOCIATION AND FALSE DESIGNATION OF ORIGIN
## UNDER LANHAM ACT § 43(a)

82.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 of this Complaint as if fully set forth herein.

83.     GQ Fashions has caused products and services to enter interstate commerce with the designation and mark "GQ" connected therewith.

84.     GQ Fashions' use of said designation and other representations constitute a false association and false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection, or association of GQ Fashions with Condé Nast and as to the origin, sponsorship, or approval of such goods and services by Condé Nast.

85.    GQ Fashions' acts are in violation of 15 U.S.C. § 1125 in that GQ Fashions has used in connection with its goods and services a false association, a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of GQ Fashions with Condé Nast and as to the origin, sponsorship, and approval of GQ Fashions' goods, services, and commercial activities.

86.    GQ Fashions' acts constitute false association and false designation of origin, and have caused Condé Nast damages, including, without limitation, lost profits, harm to reputation, and costs to remediate the confusion and harm to Condé Nast's goodwill and reputation caused by GQ Fashions.

87.    The use by GQ Fashions of the Infringing Marks as described above, is likely to cause confusion as to the source of GQ Fashions' services and constitutes false association and false designation of origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), entitling Condé Nast to an injunction, damages sustained by Condé Nast, treble its damages, GQ Fashions' profits made from its infringing use of the GQ Marks, and all costs necessary to remediate the false association and designation of origin and their effects, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. §§ 1116 and 1117.

88.     GQ Fashions' intentional, deliberate, and willful use of the Infringing Marks with knowledge of Condé Nast's trademark rights in the GQ Marks, constitutes a willful violation of 15 U.S.C. § 1125 and renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy GQ Fashions' actions pursuant to 15 U.S.C. § 1117.

89.     Pursuant to 15 U.S.C. § 1118 and equity, Condé Nast is entitled to impoundment and destruction of infringing articles.

## COUNT IV
## DILUTION UNDER LANHAM ACT § 43(c)

90.     Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 of this Complaint as if fully set forth herein.

91.     The GQ Marks are distinctive and famous marks within the meaning of 15 U.S.C. § 1125(c) by virtue of their inherent and acquired distinctiveness; the long duration and wide extent of the GQ Marks' use; the long duration, wide extent, and wide geographic reach of advertising and publicity of the GQ Marks; the large volume and wide geographic extent of sales of goods and services offered under the GQ Marks; the high degree of actual recognition of the GQ Marks; and the longstanding federal registrations of the GQ Marks.

92.     GQ Fashions' use of Condé Nast's GQ Marks, or variants thereof similar to or likely to cause confusion with the GQ Marks, has been used in commerce for GQ Fashions' commercial gain.

93.     Even if the Court finds GQ Fashions' use of the Infringing Marks is not likely to cause confusion with Condé Nast's GQ Marks, GQ Fashions has engaged in dilution by blurring because GQ Fashions' use of the GQ Marks, or variants thereof similar to or likely to cause confusion with the GQ Marks, has already caused or is likely to cause an association arising from the similarity between GQ Fashions' Infringing Marks and Condé Nast's GQ Marks that impairs the actual or acquired distinctiveness of Condé Nast's GQ Marks.

94.     GQ Fashions has engaged in dilution by tarnishment because GQ Fashions' use of the GQ Marks, or variants thereof similar to or likely to cause confusion with the GQ Marks, has already caused or is likely to cause an association arising from the similarity between GQ Fashions' infringing use and Condé Nast's GQ Marks that harms the reputation and goodwill associated with Condé Nast's GQ Marks.

95.     GQ Fashions adopted "GQ" well after the GQ Marks became famous.

96.     The dominant portion of the Infringing Marks is "GQ," which is identical to the GQ Mark.

97.   GQ Fashions uses the Infringing Marks in commerce. Such use is commercial in nature.

98.   GQ Fashions' use of the Infringing Marks in connection with its brick-and-mortar and online retail store and associated services has caused, or is likely to cause, dilution of Condé Nast's GQ Marks. It is likely that the ordinary consuming public of the U.S. will make an association arising from the similarity of the marks that impairs the distinctiveness of the GQ Marks.

99.   GQ Fashions' use of the GQ Marks and marks incorporating GQ constitutes dilution under 15 U.S.C. § 1125(c), and Condé Nast is entitled to an injunction prohibiting such further use.

100.   GQ Fashions' acts have caused Condé Nast damages, and Condé Nast seeks judgment pursuant to 15 U.S.C. § 1117 for GQ Fashions' profits made by GQ Fashions through its unlawful acts, for the damages sustained by Condé Nast, and for all costs necessary to remediate the unlawful acts and their effects, pursuant to 15 U.S.C. §§ 1116 and 1117.

101.   GQ Fashions willfully intended to trade on the recognition of Condé Nast's famous mark, entitling Condé Nast to treble its damages and GQ Fashions' profits, increased subject to the principles of equity pursuant to the provisions of 15 U.S.C. § 1117.

102.   GQ Fashions' willful conduct renders this case exceptional, entitling Condé Nast to an award of its costs, expenses, and reasonable attorneys' fees incurred in bringing the present action and prior attempts to remedy GQ Fashions' actions pursuant to 15 U.S.C. § 1117.

103.   Pursuant to 15 U.S.C. § 1118, Condé Nast is entitled to impoundment and destruction of infringing articles.

**COUNT V**
**FLORIDA COMMON LAW TRADEMARK INFRINGEMENT**

104.   Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 of this Complaint as if fully set forth herein.

105.   Condé Nast first adopted and used the GQ Marks as a means of establishing goodwill and reputation and to describe, identify or denominate particular goods and services rendered or offered by it and to distinguish them from similar goods and services rendered or offered by others.

106.   The GQ Marks are valid and protectable marks by virtue of its association with such goods and services and Condé Nast's Federal Registrations.

107.   GQ Fashions has commenced the use of an identical or confusingly similar mark to indicate or identify closely related services.

108.   As a result, use of GQ Fashions' Infringing Marks at the same time as Condé Nast's GQ Marks is likely to cause consumer confusion as to the source or as to the sponsorship of the services or goods offered or to be offered.

109.   GQ Fashions' use of Condé Nast's GQ Marks is without the consent of Condé Nast.

110.   GQ Fashions has acted with the knowledge of Condé Nast's GQ Marks, and with the intent to cause confusion and/or trade on Condé Nast's reputation and goodwill.

111.   The use by GQ Fashions of the Infringing Marks and marks incorporating GQ to identify its services, as described above, constitutes infringement of Condé Nast's rights in its GQ Marks pursuant to the common law of the State of Florida, for which infringement Condé Nast is entitled to all remedies available to it under the common law of the State of Florida.

## COUNT VI
## FLORIDA TRADEMARK AND SERVICE MARK DILUTION

112.   Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 of this Complaint as if fully set forth herein.

113.   The GQ Marks are distinctive and famous marks in the State of Florida within the meaning of Fla. Stat. § 495.151 by virtue of the high degree of inherent and acquired distinctiveness of the GQ Marks in this State; the long duration and wide extent of use of the GQ Marks in connection with the goods and services with which the GQ Marks are used; the long duration and wide extent of advertising and publicity of the GQ Marks in this State; the wide geographic extent of the trading area in which the GQ Marks is used; the high degree of recognition of the GQ

Marks in this State in Condé Nast and GQ Fashions' channels of trade; and the longstanding federal registrations of the GQ Marks.

114.   Condé Nast has used its GQ Mark extensively throughout this State and this District for over fifty (50) years.

115.   GQ Fashions' use of Condé Nast's GQ Marks, or variants thereof similar to or likely to cause confusion with the GQ Marks, has been used in commerce for GQ Fashions' commercial gain.

116.   Even if the Court finds GQ Fashions' use of the Infringing Marks is not likely to cause confusion with Condé Nast's GQ Marks, GQ Fashions has engaged in dilution by blurring because GQ Fashions' use of the GQ Marks, or variants thereof similar to or likely to cause confusion with the GQ Marks, has already caused or is likely to cause an association arising from the similarity between GQ Fashions' Infringing Marks and Condé Nast's GQ Marks that impairs the actual or acquired distinctiveness of Condé Nast's GQ Marks.

117.   GQ Fashions has engaged in dilution by tarnishment because GQ Fashions use of the GQ Marks, or variants thereof similar to or likely to cause confusion with the GQ Marks, has already caused or is likely to cause an association arising from the similarity between GQ Fashions' infringing use and Condé Nast's GQ Marks that harms the reputation and goodwill associated with Condé Nast's GQ Marks.

118.   GQ Fashions adopted "GQ" well after the GQ Marks became famous.

119.   The dominant portion of the Infringing Marks is "GQ," which is identical to the GQ Mark.

120.   GQ Fashions uses the Infringing Marks in commerce.  Such use is commercial in nature.

121.   GQ Fashions' use of the Infringing Marks in connection with its brick-and-mortar and online retail store and associated services has caused, or is likely to cause, dilution of Condé Nast's GQ Marks. It is likely that the ordinary consuming public in Florida and the Orlando area will make an association arising from the similarity of the marks that impairs the distinctiveness of the GQ Marks.

122.   GQ Fashions willfully intended to trade on the recognition of Condé Nast and its famous GQ Marks.

123.   GQ Fashions' acts have caused Condé Nast damages, and Condé Nast is entitled to injunctive relief and all other available statutory remedies under Fla. Stat. § 495.151, including, without limitation: GQ Fashions' profits made by GQ Fashions through its unlawful acts; damages sustained by Condé Nast; for all costs necessary to remediate the unlawful acts and their effects; and for the costs, expenses, and attorney fees (as this is an exceptional case) incurred in bringing the present action and prior attempts to remedy GQ Fashions' actions.

124.   Condé Nast further seeks judgment for three times the amount of GQ Fashions' profits or Condé Nast's damages, whichever is greater, due to the nature of GQ Fashions' conduct pursuant to Fla. Stat. §§ 495.151(2) and 495.141.

125.   Pursuant to Fla. Stat. § 495.151(2) and equity, Condé Nast is entitled to preliminary and permanent injunctive relief against GQ Fashions to stop the illegal conduct.

126.   Pursuant to Fla. Stat. §§ 495.151(2) and 495.141(1), Condé Nast is entitled to impoundment and destruction of infringing articles.

## COUNT VII
## VIOLATION OF FLORIDA DECEPTIVE
## AND UNFAIR TRADE PRACTICES ACT

127.   Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 and Counts I to VI of this Complaint as if fully set forth herein.

128.   As alleged herein, GQ Fashions' violations of the Lanham Act and Florida state and common law, including trademark infringement, unfair competition, false association and false designation of origin, and dilution, constitute unfair methods of competition and unfair acts or practices in the conduct of trade or commerce, in violation of Fla. Stat. § 501.204, entitling Condé Nast to all remedies available, including damages and reasonable attorneys' fees and costs.

129.   GQ Fashions' violations of the Lanham Act and Florida state and common law, including trademark infringement, unfair competition, false association and false designation of origin, and dilution, were known by GQ Fashions to be deceptive and misleading, or through the exercise of reasonable care or investigation could or might have been ascertained to be deceptive and misleading.

130.   GQ Fashions' deceptive and unfair trade practices were conducted with the intent to induce others to rely upon such deceptive and unfair acts and act on them.

131.   GQ Fashions' deceptive and unfair trade practices were conducted for the purpose of selling or disposing of personal property or services, including, without limitation, men's and women's apparel through brick-and-mortar and online retail stores and related goods and services, or to induce the public to enter into obligations relating to such property or services.

132.   GQ Fashions' conduct has misled the consuming public concerning the nature, characteristics, and quality of GQ Fashions' goods and services, to the consuming public's detriment and the detriment of Condé Nast's legitimate business enterprise.

133.   Such deceptive and unfair acts offend public policy and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

134.   GQ Fashions' actions violate standards of unfairness and deception as set forth and interpreted by federal courts and/or violate 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and Fla. Stat. § 495.151, all of which proscribe unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices.

135.   By these actions, GQ Fashions has engaged and continues to engage in unfair or deceptive acts and practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* As a result, Condé Nast has suffered, and will continue to suffer, damage to its business, reputation, and goodwill.

136.   Condé Nast has suffered actual damages as a direct and proximate result of GQ Fashions' wrongful, deceptive and unfair trade practices.

137.   GQ Fashions' deceptive and unfair trade practices are causing and will continue to cause Condé Nast to suffer irreparable harm, for which Condé Nast has no adequate remedy at law.

138.   Condé Nast is entitled to injunctive relief and all other available statutory remedies, including, but not limited to, Condé Nast's damages; GQ Fashions' profits; and attorney fees and costs pursuant to Fla. Stat. §§ 501.2105 and 501.211.

139.   Further, Condé Nast is entitled to injunctive relief against GQ Fashions to stop the illegal conduct.

## COUNT VIII
## FLORIDA UNFAIR COMPETITION

140. Condé Nast hereby realleges and incorporates by reference the allegations of paragraphs 1 to 67 and Counts I to VII of this Complaint as if fully set forth herein.

141. As alleged herein, GQ Fashions has engaged in deceptive or fraudulent conduct, which is likely to cause, if it has not already, customer confusion in violation of Florida common law.

142. GQ Fashions' actions, as described above, constitute unfair competition under the common law of the State of Florida, in that GQ Fashions' actions constitute Federal Trademark Infringement under the Lanham Act, False Association, False Designation of Origin, and Unfair Competition and Passing Off under the Lanham Act, Dilution under the Lanham Act, Dilution under Florida statutory law, Florida common law trademark infringement and violation of the Florida Deceptive and Unfair Trade Practices Act, entitling Condé Nast to all remedies available under Florida law for such unfair competition.

143. GQ Fashions' actions are likely to cause consumers to believe that GQ Fashions' services originate from the same source as, or are sponsored or approved by Condé Nast, or that there is an association, affiliation, or connection between GQ Fashions and Condé Nast.

144.   Through GQ Fashions' unauthorized use of the GQ Marks in connection with GQ Fashions' goods and services in commerce, GQ Fashions has committed trademark infringement, passing off, palming off, imitating, and/or unfair or deceptive practices that are causing or are likely to cause confusion or deception.

145.   GQ Fashions has used in connection with its goods and services a false designation of origin, or a false or misleading description and representation of fact, which is likely to cause confusion, and to cause mistake, and to deceive as to the affiliation, connection, or association of GQ Fashions with Condé Nast, and to deceive as to the source, sponsorship, approval, or certification of GQ Fashions' goods or services by Condé Nast.

146.   GQ Fashions' acts as alleged herein were committed with the intent to deceive and defraud the public in order to gain an increase in its sales, customer base, and share in the apparel and retail industry.

147.   GQ Fashions is liable to Condé Nast for unfair competition under Florida law, because GQ Fashions conduct is tortious and has deprived Condé Nast of customers and other prospects.

148.   GQ Fashions' acts as alleged herein constitute unfair, deceptive, or misleading acts in violation of Florida law. GQ Fashions' acts of unfair competition have caused Condé Nast damages, and Condé Nast seeks judgment for GQ Fashions' profits made by GQ Fashions' unfair competition, for the damages sustained by

Condé Nast, for all costs necessary to remediate the unfair competition and their effects, and for the costs incurred in bringing the present action and prior attempts to remedy GQ Fashions' actions.

149.   Condé Nast further seeks judgment for punitive damages of at least three times the amount of GQ Fashions' profits or Condé Nast's damages, whichever is greater, due to the nature of GQ Fashions' conduct.

150.   Further, Condé Nast is entitled to preliminary and permanent injunctive relief against GQ Fashions to stop the illegal conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Condé Nast respectfully demands a jury trial, and prays for the following relief against GQ Fashions:

1.   That the Court enter a judgment in favor of Condé Nast and against GQ Fashions as to all causes of action alleged herein.

2.   That GQ Fashions and its officers, directors, agents, servants, employees, and all persons in active concert and participation with them, be permanently enjoined from directly or indirectly using Condé Nast's GQ Marks, or any other mark that is similar in appearance to Condé Nast's GQ Marks as part of any trademark, service mark, trade name, corporate name, or assumed name; or on the Internet in any domain name, title, description, keyword, source code, tag, banner, link, and any other use for the purpose of directing Internet traffic; or in

social media; or in any other manner in connection with business, products, or services within the U.S.

3.     That GQ Fashions be ordered to deliver up for destruction all products, literature, signs, labels, tags, prints, packages, wrappers, containers, fabrics, advertising materials, stationery, and any other items in GQ Fashions' possession or control that bear Condé Nast's GQ Marks, or any other mark that is similar to Condé Nast's GQ Marks, and that GQ Fashions be ordered to deliver up for destruction all plates, molds, matrices, masters, and other means of producing or applying the prohibited marks.

4.     That GQ Fashions be ordered to transfer ownership of any domain names incorporating the GQ Marks to Condé Nast.

5.     That GQ Fashions be ordered to file with the Court and serve on Condé Nast, within 30 days after the entry of an injunction, a report in writing under oath setting forth in detail the manner and form in which GQ Fashions has complied with the injunction.

6.     That GQ Fashions be required to pay and account to Condé Nast for any and all benefits or profits derived by GQ Fashions from the use of Condé Nast's GQ Marks and any name or mark incorporating any mark, word, designation, name, or domain name that is confusingly similar to the GQ Marks, including the sale of any and all products or services associated with any such name or mark, and for all

damages sustained by Condé Nast by reason of said acts of unfair competition, false designation of origin, and/or other illegal acts complained of herein to the full extent permitted by 15 U.S.C. §§ 1117 and 1125, and Florida statutory and common law.

7.     That in accordance with the Lanham Act and Florida statutory and common law, Condé Nast be awarded punitive and/or treble damages in an amount no less than three times the amount of GQ Fashions' profits or Condé Nast's damages, whichever is greater, increased subject to the principles of equity, due to the wanton, egregious, willful, deliberate, intentional, and/or malicious nature of its actions.

8.     That the costs of this action be awarded to Condé Nast.

9.     That Condé Nast be awarded its reasonable attorney fees due to the exceptional nature of this case and GQ Fashions' intentional, wanton and willful illegal conduct.

10.     That GQ Fashions be liable for any award of monetary damages, treble damages, punitive damages, costs, and/or attorney fees.

11.     That pre-judgment and post-judgment interest be awarded to Condé Nast.

12.     That Condé Nast have such other and further relief, including without limitation equitable relief, as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Condé Nast demands a trial by jury.

Dated:  April 14, 2021                    Respectfully submitted,

ADAMS AND REESE LLP

/s/ Michael A. Kolcun
Eric J. Partlow
Florida Bar No. 556531
Primary: eric.partlow@arlaw.com
Secondary: ann.jones@arlaw.com

Michael A. Kolcun
Florida Bar No. 86043
Primary: michael.kolcun@arlaw.com
Secondary: ann.jones@arlaw.com

Bank of America Plaza
101 E. Kennedy Blvd., Suite 4000
Tampa, Florida 33602
(813) 402-2880
*Attorneys for Plaintiff*